UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

David Hardy #159525,

        Plaintiff,                            Case No. 2:09-cv-257

v.                                          Honorable Gordon J. Quist

Mark West, et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants West, Lovin, Wight, Davis, Simpson, Shull, Eicher, LaPlaunt, Darmon, Scarff, Averance, Rosebrock, and Boswell. The Court will serve the complaint against Defendants Merlene and Wood.

**Discussion**

I.      Factual allegations

Plaintiff David Hardy #159525, an inmate at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Health Care Administrator Mark West, Nurse Tresa Lovin, Supervisor / Manager Leslie Wight, Nurse Lori L. Davis, Administrator Al Simpson, Nurse Practitioner Andrea Shull, Nurse Dawn Eicher, Nurse Melissa LaPlaunt, Nurse Unknown Merlene, Nurse Joseph Darmon, Estate of Dr. Benjamin Scarff, Dental Technician Unknown Averance, Dental Technician Unknown Rosebrock, Psychologist Kyle D. Wood, and Psychologist Unknown Boswell.

Plaintiff alleges in his complaint that prior to his incarceration, he had been treated for chronic pain in his back, arms, legs, and neck, TMJ (temporal mandibular joint) syndrome, and chronic depression. Plaintiff did two courses of physical therapy and his prognosis was "guarded." A 2008 MRI revealed that Plaintiff was also suffering from at least one ruptured disc, and Plaintiff was advised that he could either have surgery or receive "eperderm treatment."

Plaintiff arrived in the MDOC on June 26, 2008, and informed officials of his medical history. Plaintiff told the Psychologist about his medications and admitted that he had used marijuana for pain control. Plaintiff was transferred to URF on July 28, 2008, and states that over a period of time he sent numerous kites seeking medical attention. Plaintiff contends that the kite responses nearly all stated that his complaints were "routine." Plaintiff claims that he has flat feet, but was denied canvass shoes and developed a painful corn on his right big toe. Medical staff advised that Plaintiff use insoles, but Plaintiff claims that only exacerbated the problem. Plaintiff states that he was wrongly confined to segregation for an alleged assault, during which he suffered

from chest pains and difficulty breathing. When Plaintiff was released from segregation on February 28, 2009, he continued to complain of various pains.

Plaintiff was seen by Defendant Scarff on February 26, 2009, who changed his medications. Plaintiff then broke out with "ring-worm-like splotches" which was caused by the ointment Plaintiff had received from Defendant Scarff. Around this time, Plaintiff heard Defendant Merlene telling other inmates that Plaintiff was a rapist. Plaintiff claims that this happened on a daily basis. In addition, Plaintiff states that he was frequently called into health care to have his vitals taken by a very attractive nurse, causing Plaintiff to believe that Defendants were trying to set him up.

In May of 2009, Plaintiff was seen by Dr. Barrie Dunseath, who ordered Plaintiff to stop taking certain medications and prescribed a "dermatology lotion." Dr. Dunseath indicated that he would like to do a "skin graf-sample," but doubted that the medical administration would agree to pay for the test. Dr. Dunseath also stated that he would like to send Plaintiff to a dermatologist, but did not think that the MDOC would pay for such a visit. Plaintiff was denied a follow-up visit with Dr. Dunseath.

Plaintiff's skin condition improved for a time. However, on September 18, 2009, it grew worse. Plaintiff requested to be seen by his "world" doctor, Dr. Bharat Tolia. Plaintiff's request was denied. Plaintiff believes that much of the mistreatment he received was because he had been labeled a rapist. Plaintiff insists that he has never raped anyone. Plaintiff states that he has to "walk the gauntlet of abuse" every single day, and is denied medical care, psychiatric services and dental care because staff and inmates believe that he is a rapist.

On October 7, 2009, Plaintiff was finally examined for his complaints of back pain by Dr. Stallman. Plaintiff claims that he has repeatedly requested dental services, but that his

requests have all been denied. Plaintiff also contends that he was denied psychological care for his chronic depression and other mental health issues. Plaintiff was initially seen by Defendant Wood, who stated that Plaintiff was depressed because of his marijuana usage and that no doctor would be prescribing medication for Plaintiff's depression. Plaintiff became agitated and insisted that marijuana was the only thing that kept Plaintiff from withering away due to lack of appetite. Plaintiff asked about Cymbalta, which he had been taking prior to his incarceration, but Defendant Wood stated that he would not prescribe any medication for Plaintiff. Plaintiff was devastated and went into a "frozen state of psychological zombism."

Plaintiff states that in May and June of 2009, Plaintiff was repeatedly subjected to nefarious taunts, threats, torments and torture. On June 22, 2009, Plaintiff wrote to Defendant Boswell, seeking treatment. However, Plaintiff received no response. Plaintiff claims that Defendants violated his rights under the Eighth Amendment and seeks damages.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.

Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk

of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). Where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

Plaintiff claims that Defendant Scarff prescribed him a medication which caused a skin condition and may have caused him to develop Systemic Lupus Erythematosus. However, as noted above, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. The fact that Plaintiff may have had a bad reaction to a medication prescribed by Dr. Scarff does not rise to the level of an Eighth Amendment violation.

As noted above, Plaintiff claims that he was denied dental care. The court concludes that Plaintiff has failed to meet the objective component of the Eighth Amendment test, because he has not shown that the seriousness of a his need for dental care is obvious even to a lay person. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004). Therefore, Plaintiff's claims regarding the denial of dental care are properly dismissed.

Plaintiff claims that Defendants Lovin and Shull never obtained his file from his "world" doctor as he requested. In addition, Defendant Shull told Plaintiff that she doubted health care administration would approve his treatment. Plaintiff believes that Defendant Eicher knew that the medication prescribed by Defendant Scarff caused his skin condition. Because the asserted misconduct of these Defendants does not constitute the denial of medical care, Plaintiff's claims against Defendants Lovin, Shull and Eicher are properly dismissed.

In addition, Plaintiff either fails to name Defendants West, Wight, Davis, Simpson, LaPlaunt, Darmon, and Boswell in the body of his complaint or his claims against them are based on their supervisory job responsibilities or their failure to act. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants West, Wight, Davis, Simpson, LaPlaunt, Darmon, and Boswell were personally involved in the activity which forms the basis of his claim. The only roles Defendants West, Wight, Davis, Simpson, LaPlaunt, Darmon, and Boswell played in this action involve the denial of administrative grievances or the failure to act.

Defendants West, Wight, Davis, Simpson, LaPlaunt, Darmon, and Boswell cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, the Court concludes that Plaintiff's claims against Defendants West, Wight, Davis, Simpson, LaPlaunt, Darmon, and Boswell are properly dismissed for lack of personal involvement.

Finally, the court concludes that Plaintiff's claims against Defendant Wood for the denial of mental health treatment, and Defendant Merlene for calling Plaintiff a rapist in front of other inmates, thereby making Plaintiff a target for violence, are not clearly frivolous. Therefore, these claims will not be dismissed upon initial screening.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants West, Lovin, Wight, Davis, Simpson, Shull, Eicher, LaPlaunt, Darmon, Scarff, Averance, Rosebrock, and Boswell will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Merlene and Wood.

An Order consistent with this Opinion will be entered.


Dated: January 27, 2010                              /s/ Gordon J. Quist
                                             GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE